IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY WASHINGTON o/b/o T.W., JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:09CV42-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Mary Washington o/b/o T.W., Jr.[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her son's application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On September 30, 2004 (protective filing date), plaintiff filed an application for Supplemental Security Income (SSI), alleging disability since March 1, 2004. (See R. 36-37). On July 23, 2008, after the claim was denied initially, an ALJ conducted an administrative hearing. (R. 526-544). The ALJ rendered a decision on September 29, 2008,

---

[1] The court refers to T.W., Jr. as the "plaintiff" in this memorandum of opinion.

in which he found that plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision.[2] On December 9, 2008, the Appeals Council denied plaintiff's request for review.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Factual findings that are supported by substantial evidence must be upheld by the court. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient

---

[2] Plaintiff was born on November 27, 1994 and, thus, was almost fourteen years old at the time of the ALJ's decision.

reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

### Analysis of Childhood Disability Claims

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case [he] is considered 'not disabled' and is ineligible for benefits." Id. (citing 20 C.F.R. §§ 416.924(a), (b)). "The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if [he] has 'an impairment or combination of impairments that is severe.'" Id. (citing 42 U.S.C. §§ 416.924(a), (c)). "For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278 (citing 20 C.F.R. §§ 416.911(b), 416.924(d).) This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.). As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ]

3

> marked and severe functional limitations.").
>
> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79. "Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

> (i) Acquiring and using information;
>
> (ii) Attending and completing tasks;
>
> (iii) Interacting and relating with others;
>
> (iv) Moving about and manipulating objects;
>
> (v) Caring for [one]self; and
>
> (vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an

'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).[3]

## The ALJ's Findings

The ALJ found that plaintiff suffers from the severe impairments of asthma, allergic rhinitis, and gastroesophageal reflux disease (GERD). However, he concluded that plaintiff does not have an impairment or combination of impairments which meets, medically equals or functionally equals an impairment in the listings and, therefore, that he has not been disabled since the application date. In reaching his conclusion at the "functional equivalence" step, the ALJ found that plaintiff has no limitation in the domains of interacting and relating with others, moving about and manipulating objects, and the ability to care for himself. He concluded that plaintiff has "no limitation to less than marked limitations" in acquiring and using information and in attending and completing tasks. As to the domain of health and physical well-being, the ALJ concluded that plaintiff has a less than marked limitation.

## Plaintiff's Contentions

Plaintiff argues that his asthma and allergies "have more than a minimal effect of abilities" and, accordingly, that the ALJ erred by failing to find that plaintiff's asthma and allergies are "severe" impairments. (Plaintiff's brief, pp. 3-4). Plaintiff has confused the standard for "severity" at step two of the analysis with the standard for functional

---

[3] " A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed. Appx. 171, 174 (11th Cir. 2005) (unpublished) (citing 20 C.F.R § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Id. (citing 20 C.F.R. § 416.926a(e)(3)(I)).

equivalence at the final step of the childhood disability analysis. At step two, the ALJ found that plaintiff's asthma and allergic rhinitis are "severe" impairments and, also, that his GERD is a "severe" impairment. (R. 12). Plaintiff states the issue as "[w]hether the [C]ommissioner erred as a matter of law in finding that the claimant's impairments result[] in marked or severe limitations." (Plaintiff's brief, p. 1). The only specific finding which plaintiff appears to challenge is the ALJ's determination that plaintiff has a "less than marked" limitation in the domain of health and physical well-being. (Id.).[4]

## The Evidence

The administrative transcript includes medical records dating from April 1997 through June 2008. (Exhibit 1F).[5] Plaintiff has been treated for asthma and symptoms of allergies since he was three years of age. (See, e.g., R. 516).[6] Until 2006, plaintiff received treatment from his pediatrician primarily, with occasional emergency room visits for asthma or congestion (R. 207, 241-42, 247) and one overnight admission in August 2005 due to an acute asthma attack (R. 228-40). In an August 2003 check-up for asthma, plaintiff reported

---

[4] The plaintiff identifies no particular legal error; the court construes plaintiff's argument to be that this particular finding is not supported by substantial evidence.

[5] In assembling the record, the disability examiner lumped all of the medical evidence – without regard to source or date – into a single exhibit of 393 pages, a significant number of those pages duplicated in as many as three different places within the exhibit (See, *e.g.*, R. 177, 337, 421). The "List of Exhibits" (R. 1) referenced the "F" exhibit as, simply, "Medical Evidence," with no further delineation of the content of the medical record. This practice complicated the court's navigation of the voluminous record and likely also made the ALJ's job harder than otherwise necessary.

[6] Plaintiff's pediatrician also treated him for various other complaints which are not significant with regard to to his claim for benefits.

6

"doing great," with "no wheezing for a <u>long time</u>[.]" (R. 121)(emphasis in original). The pediatrician noted that his asthma was under "good control," and continued all of his medications. (<u>Id</u>.). Plaintiff did not again seek treatment for asthma or allergies for more than a year, until September 22, 2004, when he complained to his pediatrician of nosebleeds, headaches, and asthma attacks. (R. 420).[7] In the next several months, he sought treatment a few times for asthma or allergy symptoms (R. 168-69) and, on August 23, 2005, he was admitted overnight to East Alabama Medical Center due to an asthma attack. (R. 150, 159-60, 228-40, 419).

After a few office visits in early 2006, plaintiff's pediatrician referred him to Dr. Gutierrez, in the pulmonary division of Children's Hospital, for evaluation of his asthma. (R. 153-57). Dr. Gutierrez saw plaintiff three times in 2006. At the initial visit, Dr. Gutierrez noted that plaintiff had "asthma, severe, under suboptimal control." He sent plaintiff for spirometry and upper GI testing. (R. 321, 315-26). At plaintiff's follow-up visit in August 2006, Dr. Gutierrez noted that plaintiff's asthma symptoms had improved, but that plaintiff still coughed nightly; he further noted that the upper GI series revealed a "significant degree of reflux." He started plaintiff on Protonix for the reflux, continued his remaining asthma medications, and referred him to Drs. Kankirawatana and Hains at the allergy clinic for further evaluation. (R. 311, 308-14). Plaintiff visited the allergy clinic twice in October

---

[7] Two months previously, he sought treatment for back pain, reporting that he was "play[ing] basketball a lot." The treatment note for that visit makes no reference to plaintiff's asthma or allergies. (R. 421).

2006; he was diagnosed with asthma, allergic rhinitis, urticaria[8] and atopic dermatitis. (R. 271-307). On October 30, 2006, Dr. Gutierrez wrote that plaintiff and his mother reported that he was wheezing less, had "much better" control of the GERD, had less epistaxis, was not missing school as much as he had previously, and had not required Prednisone since August. Plaintiff indicated that he was "8 out of 10; 10 being best." Dr. Gutierrez stated that plaintiff's asthma "continues to be a severe case of asthma" but that it was under better control. (R. 259-70). Plaintiff sought treatment from his pediatrician with complaints of coughing, congestion and allergy symptoms in February and March 2007. (R. 133).

In September 2007, plaintiff returned to Dr. Gutierrez; Dr. Gutierrez noted that plaintiff's asthma was under "fair" control, and that he did not believe that better control could be achieved without keeping plaintiff on systemic steroids, "which may be too much[.]" He continued plaintiff on the same medications and referred him to the allergy clinic for another evaluation. (R. 142). In notes for plaintiff's November 19, 2007 visit to the allergy clinic, the doctor indicated that plaintiff was "doing okay" as to the allergic rhinitis. She noted his reports of flares of asthma twice a month and nocturnal symptoms once or twice a week. She stated that he is "a severe persistent asthmatic who appears to be stable." (R. 137-38). In February 2008, plaintiff returned to Dr. Gutierrez. Dr. Gutierrez indicated that the allergy physician had not recommended immunotherapy to treat plaintiff's allergies, due to the severity of his asthma. He further noted, "Since his previous visit here

---

[8] Urticaria is synonymous with "hives." *Stedman's Medical Dictionary* (26th ed., 2005) at p. 1895.

8

he has done fairly well and comes in today with no complaints.  In fact, he reports that this is his best winter in relation to his asthma and he has been able to perform more physical activities with no problems although he is still not allowed to play competitive football or basketball, which is one of his major wishes."  Dr. Gutierrez noted that spirometry testing continued to show "a moderate obstructive pattern," and he continued plaintiff on his regimen of medication. (R. 143).  At a visit to his pediatrician in May 2008, plaintiff reported an "asthma flare" and "acid reflux flare."  (R. 144).

At the administrative hearing in July 2008, plaintiff testified that he had no medical problems other than his asthma and allergies.  (R. 534).  He testified that he was supposed to be in the eighth grade but had failed the seventh grade.  He stated that he had missed about seven days of school for medical check-ups and to get prescriptions.  He failed math, science and English, and does not have any idea why he failed.  (R. 532-33).[9]  He had been on the school football team but had to quit after his doctor told his mother that plaintiff could play "at [his mother's] own risk."  He plays basketball with his friends, but has to wait until evening, when it cools off, and cannot play "too long."  He stated that he does not have problems playing if he has his inhaler. (R. 536).  He has problems with his allergies primarily in the spring and fall.  (R. 537).

Plaintiff's mother testified that plaintiff has to carry an Epi-pen in case of an allergic reaction, that he constantly has nosebleeds, that she does not allow him play basketball for

---

[9] There is no indication in the record that plaintiff had academic problems previously or that he failed any previous grade.

9

as long as he would like to play and that, at school, he can participate "only for so long" until they have him sit out. (R. 537-40). She stated that he does not sleep well at night because he gets nosebleeds and has to use either his inhaler or a nebulizer. She testified that plaintiff used to do well in school but that he now cannot keep up. She believes his academic problems are because of his medical problems and stated that she "feel[s] that his asthma and his allergies can slow him down a whole lot and he's on so much medication for his asthma and allergies." (R. 542).[10] Plaintiff testified that the medication helps him and that he is able to "go longer playing PE" when he takes his medication. (R. 545).

Dr. Harold Bornstein testified as a medical expert. He had reviewed the records through November 2006 but did not have any of the records from 2007 or 2008. (R. 527-31). After listening to the testimony and asking plaintiff's mother a few questions about plaintiff's medications and treatment, Dr. Bornstein testified that, while plaintiff's impairments are "severe," they do not meet, medically equal, or functionally equal the listings. (R. 545-49).

In reaching his conclusions regarding plaintiff's limitations, the ALJ relied heavily on Dr. Bornstein's testimony. (See R. 15). The ALJ observed that the treatment notes for 2007 and 2008 show continued improvement and, thus, do not "take away from Dr. Bornstein's testimony" that plaintiff's condition does not meet, medically equal or functionally equal a listing. (Id.).[11]

---

[10] Plaintiff's mother testified that his hospitalization was in August 2007, but the transcript includes no medical records of an August 2007 hospitalization. (R. 546).

[11] An ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources. Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991). In this

## CONCLUSION

The ALJ's opinion reflects a thorough consideration of the evidence of record and the regulatory provisions applicable to childhood disability claims. Upon review of the record as a whole, the court concludes that the ALJ's findings are supported by substantial evidence and proper application of the law. Accordingly, the decision of the Commissioner is due to be AFFIRMED. A separate judgment will be entered.

Done, this 31st day of August, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

case, no examining source expressed an opinion regarding whether plaintiff's limitations met, medically equaled or functionally equaled a listing.